1
2
3
4

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

CENTRO RADIOLOGICO ROLON, INC.,
MAITE ROLÓN, and CESAR DEL
VALLE,

       Plaintiffs,

       v.

UNITED STATES OF AMERICA;
UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES;
ROSA EMILIA RODRIGUEZ-VELEZ;
HONORABLE KATHLEEN SEBELIUS;
HONORABLE ERIC HOLDER, and
FIRST COAST SERVICES OPTIONS,
INC.,

       Defendants.

Civil No. 12-2051 (JAF)

5
6

**OPINION AND ORDER**

7       Plaintiffs Centro Radiológico Rolón, Inc. ("CRR"), and its owners Maite Rolón

8   and César del Valle, filed suit against defendants the United States of America; the

9   United States Department of Health and Human Services ("HHS"); the United States

10   Attorney for the District of Puerto Rico, Rosa Emilia Rodríguez-Vélez; the Secretary of

11   HHS, Honorable Kathleen Sebelius; the Attorney General of the United States,

12   Honorable Eric Holder; and a Center for Medicare and Medicaid Services ("CMS")

13   contract carrier called First Coast Services Options, Inc. ("First Coast"). The plaintiffs

14   claim that the defendants violated their rights when they revoked CRR's enrollment

15   billing privileges under the Medicare program, and plaintiffs ask for a writ of mandamus,

16   a declaratory judgment, and a temporary restraining order or preliminary injunction.

1    (Docket No. 1.)   The defendants filed a motion to dismiss for lack of jurisdiction.

2    (Docket No. 13.)  We grant the defendants' motion to dismiss.

3                                          **I.**

4                                    **<u>Background</u>**

5          The essential facts of this case are not in dispute.  CMS is a component of the

6    HHS.  CMS is responsible for the administration of the Medicare program, and contracts

7    with private entities known as Medicare administrative contractors ("MACs") to assist it

8    in administering the program.   MACs review each Medicare provider or supplier to

9    ensure compliance with regulatory requirements of the Medicare program, and MACs

10   conduct a first-level appeal with respect to any denial or revocation of Medicare

11   enrollment and billing privileges.  (Docket No. 14 at 3.)  <u>See</u> 42 U.S.C. § 1395kk-1(a)(4).

12   In this case, First Coast was the MAC that oversaw credentialing standards in Puerto

13   Rico, where CRR, a provider and supplier enrolled in Medicare, is based.  (Docket

14   No. 14 at 1.)

15         In a letter dated July 12, 2011, First Coast notified CRR that, consistent with 42

16   C.F.R. § 424.515, it was requiring CRR to submit a completed enrollment application

17   within sixty days.  (Docket No. 14 at 7.)  In a September 19, 2011, letter, First Coast

18   revoked CRR's Medicare billing privileges effective October 19, 2011, as a result of

19   CRR's failure to submit the application by the deadline.  (Docket No. 14 at 7.)  On

20   December 15, 2011, First Coast issued a reconsidered determination affirming its

21   decision to revoke CRR's Medicare billing privileges.  (Docket No. 14 at 7.)

1    CRR appealed First Coast's reconsidered determination to an Administrative Law

2    Judge ("ALJ").  (Docket No. 14 at 7.)  But, on March 27, 2012, CMS and CRR submitted

3    a joint motion for remand, which stated that CMS would direct First Coast to reverse

4    CRR's revocation and afford CRR another opportunity to submit an enrollment in the

5    Medicare program, with the possibility that the enrollment may be denied once the

6    completed application was reviewed.  (Docket No. 14 at 7.)

7            On June 29, 2012, First Coast postmarked a letter notifying CRR that, pursuant to

8    the joint order, it had removed the revocation and reinstated CRR's Medicare billing

9    privileges, effective November 18, 2012.  (Docket No. 14 at 7.)  Then, in a letter dated

10   July 27, 2012, First Coast informed CRR that its Medicare billing privileges would be

11   revoked effective August 26, 2012.  (Docket No 14 at 8.)  First Coast stated that CRR did

12   not meet all the credentialing standards for an Independent Diagnostic Testing Facility

13   ("IDTF"), such as evidence of the required proficiency and qualifications for its

14   supervising physicians and technicians.  (Docket No. 14 at 2.)

15           On December 27, 2012, CRR filed the instant complaint in federal court.  (Docket

16   No. 1.)  CRR also requested reconsideration from First Coast and, on January 15, 2013,

17   First Coast issued a reconsidered determination affirming the revocation on the same

18   grounds.   (Docket No. 14 at 8.)   On March 8, 2013, CRR appealed First Coast's

19   reconsidered determination to an ALJ.  (Docket No. 14 at 8.)  At the time of the filings in

20   this proceeding, CRR's appeal before the ALJ was still pending.  (Docket No. 14 at 8.)

21   On July 1, 2013, the defendants filed a joint motion to dismiss the case in our court.

22   (Docket Nos. 13, 14.)  On September 12, 2013, CRR responded in opposition to the

1    motion to dismiss.  (Docket No. 20.)  The court has not been notified of an outcome in

2    the ALJ proceeding.

3                                               **II.**

4                                       **Legal Analysis**

5          A plaintiff's complaint will survive a motion to dismiss if it alleges sufficient facts

6    to establish a plausible claim for relief.  See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal,

7    556 U.S. 662, 677 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

8    In assessing a claim's plausibility, the court must construe the complaint in the plaintiff's

9    favor, accept all non-conclusory allegations as true, and draw any reasonable inferences

10   in favor of the plaintiff.  Rodriguez-Ramos v. Hernández-Gregorat, 685 F.3d 34, 39-40

11   (1st Cir. 2010) (citation omitted).

12         Medicare is governed by Title XVIII of the Social Security Act, 42 U.S.C.

13   §§ 1395-1395ggg (the "Medicare Act"). In order to enroll in the Medicare program, an

14   IDTF must certify in its enrollment application that it meets certain credentialing

15   standards.  42 C.F.R. § 410.33(g).   To retain billing privileges, a supplier must resubmit

16   and recertify the accuracy of its enrollment information every five years.  42 C.F.R.

17   § 424.515.  Pursuant to the Medicare Act, CMS may revoke a supplier's enrollment and

18   billing privileges in the Medicare program at any time if it cannot demonstrate that it is in

19   compliance with requirements.  42 C.F.R. § 424.535(a)(1); 42 C.F.R. § 410.33(h).

20         Among the credentialing requirements are that an IDTF have at least one

21   supervising physician who can prove proficiency in the performance and interpretation of

22   each type of diagnostic procedure performed by the IDTF.  This proficiency must be

1  documented by certification in specific medical subspecialties or by criteria established

2  by the Medicare contractor for the IDTF service area.  42 C.F.R. § 410.33(b)(2).  Another

3  requirement of the program is that non-physician employees of an IDTF must

4  demonstrate basic qualifications and evidence training and proficiency.  42 C.F.R.

5  §§ 410.33(c), 410.33(g)(12).

6        According to the Medicare Act, a supplier who is dissatisfied with a reconsidered

7  determination may request a hearing before an ALJ and, subsequently, review by the

8  Departmental Appeals Board ("DAB").  42 C.F.R. § 498.5(l).  It is only after a "final

9  decision" by the DAB that a supplier can seek federal judicial review.  42 C.F.R.

10 § 498.5(l)(3); 42 U.S.C. § 1395ff(b).  Therefore, we lack jurisdiction at this time.  See

11 Puerto Rican Assoc. of Physical Med. And Rehab., Inc. v. United States, 521 F.3d 46, 48

12 (1st Cir. 2009).

13       CRR claims other bases of jurisdiction, but they fail as well.  CRR cannot sue

14 under 28 U.S.C. § 1331, because section 405(g), "to the exclusion of 28 U.S.C. § 1331, is

15 the sole avenue for judicial review for all 'claims arising under' the Medicare Act."

16 Heckler v. Ringer, 466 U.S. 602, 614-15 (1984) (citations omitted).  As for the All Writs

17 Act, 28 U.S.C. § 1651, does not provide an independent basis for jurisdiction, but merely

18 aids in cases where the court already has jurisdiction.  Syngenta Crop Protection, Inc. v.

19 Henson, 537 U.S. 28, 31 (2002).  The Declaratory Judgment Act, 28 U.S.C. § 2201, also

20 does not provide an independent ground for jurisdiction.  See Vargas v. Chardon, 405

21 F.Supp. 1348 (D.P.R. 1975); Moro v. Telemundo Incorporado, 387 F. Supp. 920 (D.P.R.

22 1974); Longo-Puerto Rico, Inc. v. U.S.E.P.A., 575 F. Supp. 990 (D.P.R. 1983).  Finally,

Civil No. 12-2051 (JAF)                                                                    -6-

1   jurisdiction is not available pursuant to 28 U.S.C. § 1343, because government entities

2   retain sovereign immunity under that statute.  Many other circuits have stated as much.

3   See Affiliated Prof'l Home Health Care Agency, 164 F.3d 282, 286 (5th Cir. 1999)

4   (stating that "suits against the United States brought under the civil rights statutes are

5   barred by sovereign immunity"); Salazar v. Heckler, 787 F.2d 527 (10th Cir. 1986);

6   Jachetta v. U.S., 653 F.3d 898, 907-08 (9th Cir. 2011) ("we hold that 28 U.S.C.

7   § 1343(a)(3) does not waive sovereign immunity").

8                                                    **III.**

9                                               **Conclusion**

10         Defendants' motion to dismiss (Docket No. 13) is **GRANTED**.  Judgment will

11   enter dismissing the complaint.

12   **IT IS SO ORDERED.**

13         San Juan, Puerto Rico, this 13th day of February, 2014.

14                                                          S/José Antonio Fusté
15                                                          JOSE ANTONIO FUSTE
16                                                          U. S. DISTRICT JUDGE